**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN CHENENSKY, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NEW YORK LIFE INSURANCE CO., et al., <br><br> Defendants. | 07 Civ. 11504 (WHP) |
| AVRAHAM GOLD, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NEW YORK LIFE INSURANCE CO., et al., <br><br> Defendants. | 09 Civ. 3210 (WHP) <br><br> *Electronically Filed* |

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' JOINT MOTION TO AMEND COMPLAINTS**

---

MORGAN, LEWIS & BOCKIUS LLP
Richard G. Rosenblatt (pro hac vice)
Sean P. Lynch
502 Carnegie Center
Princeton, New Jersey 08540
Phone: (609) 919-6600
Fax: (609) 919-6701
rrosenblatt@morganlewis.com
slynch@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Michael L. Banks (pro hac vice)
1701 Market Street
Philadelphia, Pennsylvania 19103
Phone (215) 963-5387
Fax (215) 963-5001
mbanks@morganlewis.com
*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL HISTORY OF THE CHENENSKY AND GOLD ACTIONS .............. 2

III.  ARGUMENT ..................................................................................................... 4

    A.    Plaintiffs' Liquidated Damages Amendments Should Be Denied Because Shady Grove Is Inapplicable, Plaintiffs Unduly Delayed In Seeking Leave to Amend, To Avoid Undue Prejudice To New York Life And The Proposed Amendments Could Not Withstand A Motion To Dismiss ................... 4

        1.    Shady Grove Applies Solely To Diversity Cases And, Therefore, Is Inapplicable To The Matter At Bar........................................................ 4

        2.    Plaintiffs' Inordinate, Undue And Apparently Intentional Delay Warrants Denial Of Plaintiffs' Liquidated Damages Amendment ........... 8

        3.    Plaintiffs' Liquidated Damages Amendments Must Be Denied Because Of Undue Prejudice; Plaintiffs' Claim That The Availability Of Liquidated Damages In Gold Is Misplaced As Jurisdiction Does Not Lie in Gold And That Case Must Be Dismissed ................................................................................... 11

        4.    Plaintiffs' Proposed Liquidated Damages Amendments Cannot Withstand a Motion to Dismiss.................................................... 14

    B.    The Court Should Not Permit Chenensky's Commission Chargeback Claim Amendment Because It is Futile And Because Of Chenensky's Undue Delay And Resulting Undue Prejudice .................................. 20

        1.    Chenensky's Proposed Commission Chargeback Claim Is Purely Hypothetical And Cannot Withstand A Motion To Dismiss.................. 20

        2.    Chenensky Unduly Delayed For Over Four Years In Seeking to Add His Proposed Chargeback Claim .................................... 21

        3.    Chenensky's Proposed Chargeback Amendment Would Be Unduly Prejudicial Because He Is Proposing, Post-Summary Judgment, To Add A Hypothetical Claim On Behalf Of Thousands Of Agents........... 22

IV.   CONCLUSION................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

<u>Ansam Assocs., Inc. v. Cola Petroleum, Ltd.</u>,
   760 F.2d 442 (2d Cir. 1985)..........................................................................12

<u>Ashcroft v. Iqbal</u>,
   129 S. Ct. 1937(2009)...........................................................................14, 20

<u>Ayres v. 127 Rest. Corp.</u>,
   12 F. Supp. 2d 305 (S.D.N.Y. 1998).............................................................19

<u>Baum v. Rockland County</u>,
   161 F. App'x 62 (2d Cir. 2005) .....................................................................10

<u>Bell Atl. Corp. v. Twombly</u>,
   550 U.S. 544 (2007)...............................................................................14, 20

<u>Berardi v. Fundamental Brokers, Inc.</u>,
   Nos. 89-5143, 90-0646, 1990 WL 129174 (S.D.N.Y. Aug. 30, 1990).....................19

<u>Berman v. Parco</u>,
   986 F. Supp. 195 (S.D.N.Y. 1997).................................................................12

<u>Chenensky v. New York Life Ins. Co.</u>,
   No. 07-11504, 2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011) ..........................................*passim*

<u>CL-Alexanders Laing & Cruickshank v. Goldfeld</u>,
   739 F. Supp. 158 (S.D.N.Y. 1990).................................................................12

<u>Cohen v. Fox–Knapp, Inc.</u>,
   226 A.D.2d 207 (1st Dep't 1996) ..................................................................19

<u>Cresswell v. Sullivan & Cromwell</u>,
   922 F.2d 60 (2d Cir. 1990), <u>aff'd</u>, 962 F.2d 2 (2d Cir. 1992)...........................9

<u>Daley v. Related Cos.</u>,
   179 A.D.2d 55 (1st Dep't 1992) ....................................................................19

<u>Deere v. Goodyear Tire & Rubber Co.</u>,
   175 F.R.D. 157 (N.D.N.Y 1997)......................................................................9

<u>Denney v. Deutsche Bank AG</u>,
   443 F.3d 253 (2d Cir. 2006)...........................................................................15

DiPonzio v. Bank of Am. Corp.,
No. 11-06192, 2011 WL 2693912 (W.D.N.Y. July 11, 2011) ................................................5

Edlitz v. Nipkow & Kobelt,
264 A.D.2d 437 (2d Dep't 1999) ........................................................................................18

Evans v. Syracuse City Sch. Dist.,
704 F.2d 44 (2d Cir. 1983)...................................................................................................9

Gasperini v. Center for Humanities, Inc.,
518 U.S. 415 (1996)..........................................................................................................5, 6

Gennes v. Yellow Book of N. Y., Inc.,
23 A.D.3d 520 (2d Dep't 2005) ..........................................................................................18

Gold v. New York Life Ins. Co.,
No. 09-3210, 2011 WL 2421281 (S.D.N.Y. May 19, 2011) ........................................... *passim*

Goldberger v. Bear, Stearns & Co.,
No. 98-8677, 2000 WL 1886605 (S.D.N.Y. Dec. 28, 2000) ..............................................21

Hanna v. Plumer,
380 U.S. 460 .........................................................................................................................6

Hertz Corporation v. Friend,
130 S. Ct. 1181 (2010)........................................................................................................13

Katz v. Morgenthau,
892 F.2d 20 (2d Cir. 1989)....................................................................................................9

Lewis v. Casey,
518 U.S. 343 (1996).............................................................................................................15

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992).............................................................................................................21

Lyondell-Citgo Ref., LP v. Petroleos De Venezuela S.A.,
No. 02-0795, 2004 WL 2650884 (S.D.N.Y. Nov. 22, 2004), aff'd, 2005 WL 883485
(S.D.N.Y. Apr. 14, 2005)..................................................................................................9, 10

MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.,
157 F.3d 956 (2d Cir. 1998)..............................................................................................9, 10

Marvin Inc. v. Albstein,
386 F. Supp. 2d 247 (S.D.N.Y. 2005)..................................................................................14

McBeth v. Gabrielli Truck Sales, Ltd.,
731 F. Supp. 2d 316 (E.D.N.Y 2010) ..................................................................................11

-iii-

Morris v. Fordham Univ.,
    No. 03-0556, 2004 WL 906248 (S.D.N.Y. Apr. 28, 2004) ....................................................21

Pachter v. Bernard Hodes Group, Inc.,
    10 N.Y.3d 609 (2008) ........................................................................................15, 16, 17, 18

Pefanis v. Westway Diner, Inc.,
    No. 08-002, 2010 WL 3564426 (S.D.N.Y. Sept. 7, 2010) .....................................................11

Priestley v. Am. Airlines, Inc.,
    1991 WL 64459 (S.D.N.Y. Apr. 12, 1991)...........................................................................22

Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,
    130 S. Ct. 1431 (2010) .......................................................................................... *passim*

Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,
    649 F.3d 137 (2d Cir. 2008).....................................................................................................5

State Trading Corp. of India Ltd. v. Assuranceforeningen Skuld,
    921 F.2d 409 (2d Cir. 1990)..............................................................................................8, 9

Thompson v. County of Franklin,
    15 F.3d 245 (2d Cir. 1994)...............................................................................................21

Wesley v. John Mullins & Sons, Inc.,
    444 F. Supp. 117 (E.D.N.Y. 1978) ..................................................................................6, 7

Zahra v. Town of Southold,
    48 F.3d 674 (2d Cir. 1995).................................................................................................9

## STATUTES

28 U.S.C. § 1332 ........................................................................................................13

28 U.S.C. § 1367 ...............................................................................................1, 3, 5, 6

California Labor Code § 2802 .....................................................................................16

N.Y. C.P.L.R. 901(b) ...................................................................................................4

N. Y. Lab. Law.§ 193 ..............................................................................................16, 17

## OTHER AUTHORITIES

Fed.R.Civ.P. 12(b)(6)......................................................................................................14

Fed.R.Civ.P. 23..................................................................................................4, 5, 6

Fed.R.Civ.P. 26...............................................................................................7, 8, 11

## I.      INTRODUCTION

Relying on the mantra that amendments should be granted liberally, Plaintiffs downplay the significance of their proposed amendments and strain to justify their extraordinary delay. The proposed amendments here, however, deserve much closer scrutiny than Plaintiffs suggest.

Plaintiffs each seek to add a liquidated damages claim that could potentially increase the class-wide damages sought by 25% to 100%.  Given that Plaintiffs' counsel has argued to the Court in conference – even before proposing to amend the complaints to add liquidated damages – that this case may be worth in the "tens of millions of dollars," this is no trivial amendment. So, too, is the case with Chenensky's proposed commission reversal amendment, which would expand the class period for that claim by *fourteen months*, expand the recovery period for many putative class members by several years and expand the potential class size by thousands of agents.  The timing, resulting prejudice and, ultimately, the futility of the proposed amendments warrant denial of the amendments.

Initially, the Court should deny Plaintiffs' proposed amendments because they are futile. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431 (Mar. 31, 2010), the predicate for Chenensky's liquidated damages claim, applies only to diversity cases.  This Court does **not** have diversity jurisdiction over Chenensky or Gold.  Jurisdiction in Chenensky rests on this Court's discretionary ruling under 28 U.S.C. 1367(b) and, as explained below, it now is apparent that this Court lacks any subject matter jurisdiction over Gold.[1]  Furthermore, Chenensky and Gold fail to allege facts sufficient to demonstrate that New York Life willfully violated the New York Labor law as to them, an essential prerequisite for their liquidated damages claims.  As well, Chenensky bases his proposed commission reversal claim on a

---

[1]   New York Life has submitted its pre-motion letter seeking dismissal of Gold for lack of subject-matter jurisdiction.  See Sept. 16, 2011 letter, Exh. H to Lynch Decl.

hypothetical scenario that he does not even allege affected him.  The simple explanation for the lack of such allegations is Chenensky did not sell any products with a commission chargeback schedule.  See Declaration of Carol Poole, ¶ 8.  Without having pleaded actual harm and not being in a position to solve this fatal defect, such a hypothetical claim cannot survive a motion to dismiss.  Accordingly, the Court should deny Plaintiffs' motions to amend in their entirety.

What's more, Plaintiffs cannot carry their burden of providing legitimate reasons as to why they did not seek to bring the proposed claims until more than three-and-a-half years after Chenensky filed his original Complaint, over two years after Gold filed his original Complaint, well-after the parties briefed and the Court decided summary judgment, and fourteen months after the Supreme Court decided Shady Grove.  Indeed, Plaintiffs do not cite to any excusable neglect, but rather now suggest that they intentionally delayed as part of a "litigation strategy."

Finally, allowing Plaintiffs to add liquidated damages claims and allowing Chenensky to add a commission reversal claim[2] at this late juncture unfairly prejudices New York Life.  Inclusion of these new claims would force New York Life to re-engage in discovery on Plaintiffs' individual claims – which was the subject of the long-ago completed first phase of discovery – and require New York Life to file yet another motion for summary judgment as to the proposed claims – claims that Plaintiffs should have asserted long ago.

## II.    PROCEDURAL HISTORY OF THE CHENENSKY AND GOLD ACTIONS

To appreciate the dubious nature of Plaintiffs' explanation as to why they waited years to move to amend their Complaints, a brief review of the relevant procedural histories of their cases is warranted:

---

[2]   Chenensky violated the Court's individual practices by not raising his proposed commission reversal amendment in his pre-motion letter or at the pre-motion conference with the Court.

- *December 19, 2007* – Well prior to the Second Circuit even issuing its decision in Shady Grove, Chenensky files his original Complaint alleging claims for unpaid overtime and unlawful expense deductions.

- *November 19, 2008* – Second Circuit decides Shady Grove.

- *April 9, 2009* – Gold files his original Complaint complete with a commission reversal claim and requests that Gold and Chenensky be deemed related cases.  Gold is a member of the Chenensky purported class, but Gold fails to join in that suit and Chenensky fails to seek permission to add a commission reversal claim to mirror claims being asserted by Gold.  Gold elects to keep actions separate and Chenensky makes conscious choice not to assert the commission reversal claim.

- *May 4, 2009* – U.S. Supreme Court grants certiorari in Shady Grove.

- *May 21, 2009* – New York Life moves for summary judgment in Chenensky.

- *July 28, 2009* – Gold files his First Amended Complaint.

- *September 10, 2009* – Chenensky files his First Amended Complaint and again fails to plead a commission reversal claim.

- *December 22, 2009* – This Court grants in part and denies in part New York Life's Motion for Summary Judgment in Chenensky and requests that the parties submit a joint letter concerning whether the Court had continuing jurisdiction over Chenensky.

- *January 19, 2010* – Chenensky moves for reconsideration of the Court's decision granting summary judgment as to his overtime claims.

- *January 22, 2010* – Prior to Chenensky ever raising the prospect of amending his Complaint to add a demand for liquidated damages, he seeks the consent of New York Life to request that the Court exercise its discretion pursuant to 28 U.S.C. § 1367 to retain jurisdiction over Chenensky.  Chenensky, however, never mentions that he is thinking of amending his complaint to add claims for liquidated damages that he expressly waived in his initial complaints.  On January 22, 2010, the parties submit a joint letter requesting that the Court retain jurisdiction.

- *March 10, 2010* – The Supreme Court decides Shady Grove.

- *June 1, 2010* – This Court denies Chenensky's motion for reconsideration.

- *June 22, 2010* – Three and one-half months after Shady Grove is decided, the Court holds its conference where it agrees to exercise 28 U.S.C. 1367(b) jurisdiction over Chenensky.  Chenensky does **not** mention Shady Grove or any potential liquidated damages claim at the conference.

- *September 27, 2010* – Defendants move to strike Chenensky's class allegations.  Defendants' motion has no bearing on Chenensky's individual claim.

- *October 29, 2010* – New York Life moves for summary judgment in Gold.

- *April 27, 2011* – This Court denies the motion to strike the class allegations in Chenensky.

- ***May 15, 2011*** – This Court grants in part and denies in part New York Life's Motion for Summary Judgment in <u>Gold</u>.

- ***June 16, 2011*** – Chenensky submits a pre-motion letter seeking leave to add a liquidated damages claim. He does ***<u>not</u>*** propose adding a commission reversal claim.

- ***July 22, 2011*** – Pre-motion conference regarding Chenensky's proposed motion to amend. Chenensky does ***<u>not</u>*** propose adding a commission reversal claim.

**III.   ARGUMENT**

    **A.   Plaintiffs' Liquidated Damages Amendments Should Be Denied Because <u>Shady Grove</u> Is Inapplicable, Plaintiffs Unduly Delayed In Seeking Leave to Amend, To Avoid Undue Prejudice To New York Life And The Proposed Amendments Could Not Withstand A Motion To Dismiss.**

        **1.   <u>Shady Grove</u> Applies Solely To Diversity Cases And, Therefore, Is Inapplicable To The Matter At Bar.**

Plaintiffs concede that New York C.P.L.R. 901(b) bars them from seeking class-wide liquidated damages under NYLL §198 in state court. Section 901(b) provides:

> Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.

Prior to the Supreme Court's March 2010 fractured decision in <u>Shady Grove</u>, state and most federal courts had concluded that 901(b) preclude state-law class actions seeking liquidated damages.

Plaintiffs predicate their belated liquidated damages amendments upon the plurality opinion in <u>Shady Grove</u>, contending that <u>Shady Grove</u> opens the door to class liquidated damages claims. Plaintiffs ignore that the narrow issue upon which the Supreme Court granted *certiorari* in <u>Shady Grove</u> was as follows: "New York law prohibits class actions in suits seeking penalties or statutory minimum damages. We consider whether this precludes a federal district court **sitting in diversity** from entertaining a class action under Federal Rule of Civil Procedure 23." <u>Shady Grove</u>, 130 S. Ct. at 1436 (emphasis added). It is that question alone that the

Supreme Court answered in <u>Shady Grove</u>.  Thus, <u>Shady Grove</u> stands solely for the proposition that, ***in a diversity action***, a federal court cannot preclude a plaintiff from seeking liquidated damages in the context of a Rule 23 class action.[3]  Otherwise, the Second Circuit's holding in <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 649 F.3d 137 (2d Cir. 2008), (and numerous cases pre-dating the Second Circuit's decision) that class claims for liquidated damages are unavailable in federal court when barred in New York state court remains good law.

The Supreme Court's "in a diversity action" qualification makes a dispositive difference here, where this Court's basis for jurisdiction over <u>Chenensky</u> is this Court's June 2010 decision to exercise its discretion under 28 U.S.C. §1367(b) after having dismissed Chenensky's federal claim.  That procedural posture renders <u>Shady Grove</u> inapplicable to <u>Chenensky</u>.

The splintering of opinions in <u>Shady Grove</u> was driven by what the dissenters saw as the inequity of allowing litigants in federal court to secure relief on a state law claim that they could not obtain in state court simply by virtue of the "accident of diversity of citizenship."  <u>See</u> <u>Shady Grove</u>, 130 S. Ct. at 1471-72.  As the <u>Shady Grove</u> dissent of Justices Ginsburg, Kennedy, Breyer and Alito explained, even in a diversity action, there is a patent unfairness of permitting a plaintiff to seek a "massive monetary award explicitly barred by state law" simply by forum shopping and finding a way into federal court.  <u>Id.</u> (<u>citing</u> <u>Gasperini v. Center for Humanities</u>,

---

[3]  Indeed, at least one Court has held that <u>Shady Grove</u> does not even apply to all diversity actions.  <u>See</u> <u>DiPonzio v. Bank of Am. Corp.</u>, No. 11-06192, 2011 WL 2693912 (W.D.N.Y. July 11, 2011) (recognizing cases removed from state court on diversity grounds are different from cases originally filed in federal court with regard to <u>Shady Grove</u>'s applicability).  In <u>Diponzio</u>, after the defendants removed the case based upon CAFA diversity jurisdiction, the court analyzed whether the amount in controversy exceeded CAFA's $5 million threshold for federal jurisdiction.  The court held, notwithstanding <u>Shady Grove</u>, that the plaintiff had to remove her class liquidated damages request from her Complaint because such damages were barred since the case was originally filed in State court.  Consequently, the claim was less than $5 million and remanded to state court.

Inc., 518 U.S. 415, 431 (1996); see also Hanna v. Plumer, 380 U.S. 460, 467 ("The Erie rule is rooted in part in a realization that it would be unfair for the character or result of a litigation materially to differ because the suit had been brought in a federal court."). If, as Plaintiffs argue, liquidated damages are available under Rule 23 in connection with any New York state law claim, the Court – and the dissent– would not have so carefully framed the question as one arising out of the Court's diversity jurisdiction.

That unfairness described in Shady Grove is magnified in the context of 28 U.S.C. 1367(b) case. Logic compels treating diversity cases and cases founded on Section 1367(b) discretionary jurisdiction differently with regard to Shady Grove's applicability. In the former, like in Shady Grove, the plaintiff has every *right* to be in federal court based on original diversity jurisdiction. The benefits of Rule 23, including the opportunity to seek class-wide liquidated damages, flow from that jurisdictional *right*. In a 1367(b) case like Chenensky, by contrast, a judge exercises discretion to grant a plaintiff the *privilege* of remaining in federal court. Here, in fact, New York Life could have opposed this Court's retention of jurisdiction had it known that Plaintiffs later would attempt to obtain in federal court a significant amount of relief that would not have been available to Plaintiffs in state court. Were the Court now to permit Chenensky to add a class-wide liquidated damages claim, it will have handed him and his putative class the opportunity to increase their potentially recoverable damages by 25% to 100% by virtue of its prior discretionary jurisdictional ruling. It would be inequitable to New York Life for this Court's discretionary jurisdictional ruling – which, at the time, seemed relatively inconsequential – to result in a potential "massive monetary award explicitly barred by state law" like that described in the Shady Grove dissent. See Wesley v. John Mullins & Sons, Inc., 444 F. Supp. 117, 120 (E.D.N.Y. 1978) (declining to exercise pendent jurisdiction over a New York state class

action seeking statutory damages, noting that pendent jurisdiction was never intended to permit

plaintiffs "by a procedural device" to do that which is forbidden by state law).

The unfairness of Plaintiffs' proposed liquidated damages amendment is further

exacerbated by the fact that the Supreme Court decided <u>Shady Grove</u> between the date that the

parties submitted their joint letter requesting that the Court retain jurisdiction of this case

(January 22, 2010) (based upon interests of "judicial economy, convenience, fairness and

comity") and the date of the conference where the Court decided to retain the case (June 22,

2010).  <u>See</u> January 22, 2010 joint letter, Exh. A to Lynch Decl.  Inexplicably, Plaintiffs did not

seek to amend their Complaint to add liquidated damages in the three months between the <u>Shady</u>

<u>Grove</u> decision and the conference where the jurisdictional issue was decided.  They did not

mention <u>Shady Grove</u> or a proposed liquidated damages claim at the conference or at any time in

the year that followed.

To make matters worse, Plaintiffs' counsel now seems to suggest that their failure to raise

this proposed amendment at the time was part of a "litigation strategy."  <u>See</u> Pl. Brief, p. 15.

While Plaintiffs are entitled to employ whatever such strategy that they wish, it does not justify a

lack of candor to this Court or sharp practices when dealing with an opponent.  At the absolutely

very least, Plaintiffs were required to supplement their Initial Disclosures pursuant to

Fed.R.Civ.P. 26 to state that they would be seeking liquidated damages if the Supreme Court

reversed in <u>Shady Grove</u>.  Plaintiffs also were obliged to amend their answers to interrogatories

to list liquidated damages as an element of the relief that they sought.  <u>See</u> Answers to

Interrogatories No. 2, Exh. B to Lynch Decl.  "Litigation strategy" or not, Plaintiffs did not fulfill

these basic obligations of candor and the Court should not permit them to capitalize on their

mischief.  Stated differently, Plaintiffs' cavalier suggestion that it had no obligation to disclose

its "litigation strategy" is wrong and, indeed, contrary to their obligations under Fed.R.Civ.P. 26(f) and their obligation to seasonably supplement their interrogatory answers. The Court should not countenance such a lack of candor with opposing counsel or the Court.

Moreover, as described in Section 3 below, there is no merit to Plaintiffs' argument that New York Life would face liquidated damages claims regardless of Shady Grove's applicability to Chenensky because, unlike Chenensky, Gold is "grounded on diversity under the Class Action Fairness Act" (Pl. brief, p. 10, fn 10).  In actuality, Gold cannot assert a liquidated damages claim because this Court lacks subject matter jurisdiction over his claims.  And, regardless, adding a liquidated damages claim to Gold would be measurably different than adding it to Chenensky since the proposed Gold class is notably smaller than the proposed Chenensky class.

### 2.	Plaintiffs' Inordinate, Undue And Apparently Intentional Delay Warrants Denial Of Plaintiffs' Liquidated Damages Amendment.

There is no question that Plaintiffs could have and should have amended their Complaint years ago.  Chenensky commenced his lawsuit on December 19, 2007, before the Second Circuit issued its decision in Shady Grove barring class liquidated damages claims in federal court. Plaintiffs have not explained why the Shady Grove plaintiffs could have pursued a claim for liquidated damages while they expressly waived such a claim.  Even if Plaintiffs had good reason not to pursue liquidated damages at the outset, they did not propose filing a Second Amended Complaint until three-and-a-half years later, more than two years after Gold commenced his action, more than two years after the Supreme Court granted *certiorari* in Shady Grove and more than fourteen months after the Supreme Court reversed the Second Circuit in Shady Grove.

Courts regularly deny motions to amend where, as here, plaintiffs have unduly delayed in seeking leave to amend.  See State Trading Corp. of India Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990) (motion to amend may be denied for reasons such as "undue

delay, bad faith or dilatory motive on the part of the movant"); Evans v. Syracuse City Sch. Dist.,
704 F.2d 44, 47 (2d Cir. 1983) (reversing district court's grant of motion to amend made over
two years after facts serving as basis for motion to amend occurred, noting that "the longer the
period of an unexplained delay, the less will be required of the nonmoving party in terms of a
showing of prejudice" to defeat the motion); Zahra v. Town of Southold, 48 F.3d 674, 686 (2d
Cir. 1995) (upholding denial of request to amend complaint that was filed two and one-half years
after the commencement of the action); Lyondell-Citgo Ref., LP v. Petroleos De Venezuela S.A.,
No. 02-0795, 2004 WL 2650884, at *2 (S.D.N.Y. Nov. 22, 2004), aff'd, 2005 WL 883485
(S.D.N.Y. Apr. 14, 2005) (undue delay where motion was filed after the close of discovery and
cross-motions for summary judgment); Katz v. Morgenthau, 892 F.2d 20, 22 (2d Cir. 1989)
(upholding district court's refusal to grant plaintiff leave to amend his first amended complaint
when second amended complaint filed 13 months after first amended complaint and 16 months
after initial complaint).

   To succeed on a motion to amend brought after an "inordinate delay," the moving party
must provide a satisfactory and valid explanation for the delay.  Cresswell v. Sullivan &
Cromwell, 922 F.2d 60, 72 (2d Cir. 1990), aff'd, 962 F.2d 2 (2d Cir. 1992) (affirming denial of
motion to amend that was filed 17 months after commencement of action, six months after filing
of second amended complaint and one month after summary judgment briefing); Deere v.
Goodyear Tire & Rubber Co., 175 F.R.D. 157, 165 (N.D.N.Y 1997).  Unless the movant satisfies
his burden of providing a satisfactory and valid explanation for the delay, the Court should deny
the motion.  See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 157 F.3d 956, 962 (2d Cir. 1998)
(affirming denial of amendment, noting that the court has discretion to deny amendment where
the motion is made after an inordinate delay and the movant proffers no satisfactory explanation

for the delay); <u>Baum v. Rockland County</u>, 161 F. App'x 62, 65 (2d Cir. 2005) (affirming denial

of motion to amend where plaintiff gave "no good reason" why his additional claim could not

have been brought earlier); <u>Lyondell-Citgo</u>, 2004 WL 2650884, at *1 ("the Court may deny a

motion to amend when the movant knew or should have known of the facts upon which the

amendment is based when the original pleading was filed, particularly when the movant offers

no excuse for the delay.").

       Chenensky and Gold fail to meet their burden of providing a legitimate explanation for

their extraordinary delay in seeking leave to add liquidated damages claims.  Plaintiffs

halfheartedly attempt to justify their protracted delay by suggesting that they sought leave to

amend "as soon as ongoing dispositive motions were resolved that could have rendered the

amendments moot."  <u>See</u> Pl. Brief, p. 11.  That contrived excuse contravenes the facts and falls

far short of a "satisfactory and valid justification" for the delay.

       Plaintiffs could have proposed their amendment when the Supreme Court granted

<em>certiorari</em> in <u>Shady Grove</u> on May 4, 2009 or filed it when the Supreme Court decided <u>Shady

Grove</u> in March 2010.  They did not.  And they offer no explanation for why they did not amend

in the six months between March and September 2010, during which there were no motions

pending relating to Plaintiffs' claims under NYLL §193.  The parties even appeared for two

conferences with the Court during those six months.  The first, on June 22, 2010, concerned

whether the <u>Chenensky</u> matter should proceed in federal or state court and what the parties

viewed as the proper scope of discovery going forward.  The second, on July 29, 2010,

concerned New York Life's proposed motion to strike Chenensky's class allegations.  Despite

having ample opportunity, Plaintiffs did not move to amend or even raise the prospect of a

liquidated damages claim at that time.  By contrast, plaintiffs in other actions filed post-<u>Shady

- 10 -

<u>Grove</u> motions to amend during that period.  <u>See e.g.</u> <u>McBeth v. Gabrielli Truck Sales, Ltd.</u>, 731 F. Supp. 2d 316 (E.D.N.Y 2010) (motion to amend on same theory filed on June 2, 2010); <u>Pefanis v. Westway Diner, Inc.</u>, No. 08-002, 2010 WL 3564426, at *7 (S.D.N.Y. Sept. 7, 2010) (filing <u>Shady Grove</u> motion to amend on June 4, 2010).  Rather than follow a similar course, Plaintiffs here did nothing, opting instead to pursue their supposed "litigation strategy" of lying in wait until they could secure this Court's Order retaining jurisdiction.

That brings us to September 2010, when New York Life moved to strike Chenensky's class allegations.  That motion did not seek dismissal of Chenensky's individual claim and in no way impaired Plaintiffs' ability to seek to amend their Complaints.  <u>See</u> <u>Pefanis</u>, 2010 WL 3564426, at *7 (plaintiffs filed a <u>Shady Grove</u> motion in June 2010, immediately after the parties finished briefing motions for summary judgment and class decertification, and while those motions were pending).  That would have been an opportune time for Chenensky to seek amendment of the Complaint.  He could have alternatively sought leave to add a liquidated damages claim for a class if New York Life's motion to strike class allegations was denied or on an individual basis if the motion were granted.  And, as discussed above, Plaintiffs inexcusably failed to supplement their Rule 26(f) disclosures and their interrogatory answers.    In short, whether Plaintiffs were neglectful or intentional, they inordinately and unduly delayed in seeking leave to amend.

> **3.     Plaintiffs' Liquidated Damages Amendments Must Be Denied Because Of Undue Prejudice; Plaintiffs' Claim That The Availability Of Liquidated Damages In <u>Gold</u> Is Misplaced As Jurisdiction Does Not Lie in <u>Gold</u> And That Case Must Be Dismissed.**

Granting Plaintiffs leave to add liquidated damages claims will prejudice New York Life not just because of the inequity that would flow from the Court's earlier discretionary exercise of jurisdiction, but also because the proposed amendments come after the close of discovery on

Plaintiffs' individual claims and after this Court decided summary judgment as to those claims. Had Plaintiffs' proposed "willful violation" claim been part of their original or First Amended Complaints, New York Life would have moved for summary judgment on that claim since there are no facts supporting a finding of a willful violation.

Courts have denied leave to amend because of undue prejudice in similar circumstances. See, e.g., Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (noting that proposed amendment would have been especially prejudicial given the fact that discovery had already been completed and defendant had moved for summary judgment.); Berman v. Parco, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) ("Leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion to dismiss or for summary judgment, particularly when the new claim could have been raised earlier."), quoting 1 M. Silberberg, Civil Practice in the Southern District of New York § 6.26; CL-Alexanders Laing & Cruickshank v. Goldfeld, 739 F. Supp. 158, 167 (S.D.N.Y. 1990) (leave to amend after discovery and summary judgment "is particularly disfavored because of the resultant prejudice to the defendant.").

Plaintiffs argue that the prejudice to New York Life is minimized because New York Life already faces the prospect of liquidated damages in Gold. Putting aside that Gold was equally dilatory in seeking to add a liquidated damages claim, the basic premise of Plaintiffs' argument is completely without merit. The parties are currently engaged in the deferred class discovery in the Gold case. Through that process, New York Life has confirmed that this Court actually does not have subject matter jurisdiction over the Gold case at all. Gold has only asserted state law claims and the purported jurisdictional basis for his claims is limited to diversity jurisdiction under the Class Action Fairness Act ("CAFA"). See Amended Complaint, ¶¶ 2, 5 (Docket No.

12).  However, CAFA's so-called "home state exception" requires the Court to decline jurisdiction if more than two-thirds of the class members and the primary defendants are citizens of the state in which the action was filed.  See 28 U.S.C. 1332(d)(4)(B) ("A district court shall decline to exercise jurisdiction under paragraph (2)…over a class action in which…two thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.").

The recently-generated Gold class list consisting of TAS Agents that worked in New York State between April 2003 and the present confirms that more than two-thirds of the Gold class members are citizens of New York.  See Class List, Exh. C, to Lynch Decl.  In addition, all of the named defendants are New York citizens.  The principal place of business for all of the named defendants, including NYLIFE Insurance Company of Arizona ("NYLAZ"), is New York, New York.  See Declaration of Catherine A. Marrion.[4]  Thus, this Court lacks subject matter jurisdiction over Gold and the Court must dismiss that action.  As the Court must dismiss Gold, its pendency cannot save the proposed class-based liquidated damages claim in Chenensky.

As well, even if Gold action were on solid jurisdictional footing (which it is not), the pendency of Gold would not salve the prejudice to New York Life from adding to liquidated damages to Chenensky because Chenensky purports to represent a significantly larger class with

---

[4]    New York Life anticipates that Plaintiffs will argue that NYLAZ is a "primary defendant" incorporated in Arizona and, therefore, CAFA's home state exception is inapplicable.  As set forth in the Declaration of Catherine Marrion, NYLAZ's principle place of business is in New York.  Applying the Supreme Court's recent holding in Hertz Corporation v. Friend, 130 S. Ct. 1181 (2010), the "nerve center" for NYLAZ is New York and, therefore, pursuant to 28 U.S.C. § 1332(c)(1), it is a citizen of New York.  Thus, even if NYLAZ were a "primary defendant" – which it is not – it is not diverse with more than two thirds of more of the proposed class, rendering the home state exception wholly inapplicable.

a much longer period of potential liability exposure for thousands of  class members.

> ## 4.    Plaintiffs' Proposed Liquidated Damages Amendments Cannot Withstand a Motion to Dismiss.

This Court also should deny Plaintiffs' motions for leave to amend because their proposed liquidated damages claim amendments cannot withstand a Rule 12(b)(6) motion to dismiss.  Marvin Inc. v. Albstein, 386 F. Supp. 2d 247, 255 (S.D.N.Y. 2005).  Under Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937(2009), a complaint that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1949 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Plaintiffs concede that, to sustain their liquidated damages claim, they must allege and ultimately prove that New York Life willfully violated NYLL §193 as to them, since the 2009 amendment shifting the burden of proof under NYLL §198 is not retroactive and is inapplicable to their claims, all of which accrued prior to 2007.  See NY LEGIS 372 (2009) (2009 amendment was effective as of November 24, 2009); NY LEGIS 564 (2010) (2010 amendment was effective as of April 9, 2011).  Chenensky's initial proposed amendment submitted with their pre-motion letter consisted exclusively of the following threadbare recital concerning willfulness:  "In committing the wrongful acts alleged to be in violation of §193, New York Life acted willfully in that it knowingly, deliberately and intentionally imposed unlawful deductions, charges and required payments on plaintiff and members of the New York Class."  See Original Proposed Second Amended Compl., ¶63, Exh. D to Lynch Decl.  In the face of New York Life's opposition to their pre-motion letter, Plaintiffs now strain to add the allegations that New York Life knew or should have known that its "deductions, charges and required payments" were

illegal because (i) "the public policy against agreements purporting to forfeit earned commissions is well established in New York and was repeatedly reiterated by Courts during the New York Class Period;" (ii) in 2008, New York Life settled a prior California class action filed under California's employee expense indemnification law; and (iii) New York Life allegedly did nothing after the New York Court of Appeals decided Pachter v. Bernard Hodes Group, Inc., 10 N.Y.3d 609 (2008) to conform its compensation system to the one at issue in Pachter.  See Chenensky Proposed Second Amended Compl., ¶64, 65, 66, Exh. 1 to Mayes Decl.; Gold Proposed Second Amended Compl., ¶60, 61, 62, Exh. 2 to Mayes Decl.  These new allegations fail to state a claim of willfulness under Section 193.

First, allegations (ii) and (iii) concern alleged events occurring after Plaintiffs' departures from New York Life.[5]  Those events, by definition, are entirely irrelevant to whether New York Life willfully violated the law as to either Plaintiff.  The California lawsuit referenced in Plaintiffs' proposed Second Amended Complaints (Ortmann v. New York Life, C.D. Ca. No. 07-cv-518) was commenced in December 11, 2006 and settled in October 2008.  See Exh. 7 to Mayes Decl.  The New York Court of Appeals decided Pachter on June 10, 2008.  Thus, even if those alleged acts could provide an adequate predicate for a willful violation claim as to someone – which they cannot – Chenensky and Gold cannot rely upon those events to support a finding of willfulness to support their claims.  See e.g. Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006) (to have standing a plaintiff must have suffered an injury in fact that is distinct, palpable and fairly traceable to the challenged action); Lewis v. Casey, 518 U.S. 343, 357 (1996) ("even named plaintiffs who represent a class must allege and show that they personally have

---

[5]  Gold left New York Life in October 2004 and Chenensky left in November 2006.  See Chenensky opinion, p. 3 (Docket No. 47); Gold opinion, p. 2, (Docket No. 37).

been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quote omitted).

Second, Ortmann is irrelevant to Plaintiffs' claims under NYLL §193. That case involved a California statute (California Labor Code § 2802), which specifically requires California employers to reimburse employees for all expenses reasonably incurred in the course of their business, including mileage, postage, etc.[6]  Under that law, the Ortmann plaintiffs, a sub-set of California-based agents, alleged that New York Life failed to reimburse them for expenses incurred in their businesses.  Ortmann did not involve the question of whether New York Life's ledger-based compensation system was lawful under NYLL §193.  Moreover, the court never addressed the merits of the claims at issue in that case.  Simply put, the Ortmann plaintiffs' California Labor Code § 2802 claim and New York Life's decision to settle that case, the primary allegations of which pertained to expense reimbursements under California's indemnity law, have no bearing on whether New York Life's ledger system as applied to Chenensky and Gold comports with NYLL §193, which is not a *mandatory reimbursement* statute.

Third, even if New York Life's post-2008 reaction to Pachter were relevant to Plaintiffs' claims, it fails to support a finding that New York Life willfully disregarded a known legal obligation.  The Court of Appeals decided Pachter in favor of the employer, not the employee.  Indeed, Pachter formed the underpinning for New York Life's motion for summary judgment and this Court expressly observed that it may impose a dispositive impediment to Plaintiffs' recovery herein.  Gold v. New York Life Ins. Co., No. 09-3210, 2011 WL 2421281, at *7

---

[6]   California Labor Code §2802(a) provides "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

(S.D.N.Y. May 19, 2011); <u>Chenensky v. New York Life Ins. Co.</u>, No. 07-11504, 2011 WL 1795305, *3 (S.D.N.Y. Apr. 27, 2011).  How, then, could it have put New York Life on notice that its compensation system was unlawful?  To the contrary, <u>Pachter</u> confirmed that New York Life's ledger-based compensation system comports with NYLL §193.  New York Life's ledger system mirrors the compensation system in <u>Pachter</u>.  Just like Chenensky and Gold, Pachter received monthly statements listing the commission credits from her sales and the debits for things like travel, entertainment, elective assistant costs, marketing, business expenses related to her work which the company advanced and Pachter was required to repay, charges for late payments by her clients, and chargebacks for her client's nonpayment and "bad debt."  <u>Pachter</u>, 10 N.Y.3d at 613, n.1.  Pachter's monthly statements set forth her current month commission credits, the debits applied by the company, Pachter's draw and the closing balance.  <u>See</u> <u>Pachter Appellant's Brief</u>, No. 2008-0086, 2008 WL 2245782 (Jan. 14, 2008); Pachter's Commission Statement, p. A-88 from <u>Pachter</u> Appendix, Exh. E to Lynch Decl.

　　　Pachter's compensation statements and Plaintiffs' ledger statements here were the same in all material respects.  They both showed commission credits and debits for expenses and commission reversals, with Plaintiffs and Pachter receiving the closing balance at the end of a pay period.  <u>See</u> Chenensky Ledger Statement, Exh. F to Lynch Decl.  Most importantly, while Plaintiffs may argue that New York Life's system somehow differs from that in <u>Pachter</u>, they have not alleged – nor can they – how any such difference renders any alleged violation willful.  Boiled down to its core, Plaintiffs' argument is that any post-<u>Pachter</u> Section 193 violation must be willful.  That is not a warranted conclusion, especially since <u>Pachter</u> was decided in favor of the employer.

Plaintiffs' only allegation that pre-dates their departures from New York Life is the vague statement that New York Life should have been aware of the "public policy" against agreements to forfeit earned commissions.  This argument is absurd.  It is akin to stating that because New York Life knew or should have known of the existence of a law, it knew or should have known that it was violating that law.  The disconnect is exacerbated here where, under Pachter, Plaintiffs' claims require proof concerning their individual understandings.  Given each Plaintiff's acknowledged silence for the entirety of their tenures, New York Life could not have known that, years after they left its employ, Plaintiffs would concoct a claim that they thought they had earned their commission credits prior to New York Life posting debits to their ledgers.

Also, the cases upon which Plaintiffs rely do not support a finding that New York Life knowingly disregarded any legal obligation to them.  All of the cited cases pre-date the New York Court of Appeals decision in Pachter, which answered in the affirmative the previously "unsettled" question of whether an employer and a commissioned-sales employee can agree that negative adjustments would be factored in to the employee's commissions before determining the employee's earned wages.  See Pachter, 10 N.Y.3d 609 (2008).  Because, as the Second Circuit and the Court of Appeals both noted, the law was unsettled in this area prior to June 2008, New York Life's method of compensating Plaintiffs cannot constitute a willful violation of a known legal obligation.  Moreover, the Court of Appeals considered the cases cited by Plaintiffs when deciding Pachter and even referenced Edlitz v. Nipkow & Kobelt, 264 A.D.2d 437 (2d Dep't 1999), and Gennes v. Yellow Book of N. Y., Inc., 23 A.D.3d 520 (2d Dep't 2005), in its opinion.  It nonetheless held that the employer's compensation system was lawful.  Implicit in that holding is that the pre-2005 cases cited by Plaintiffs were wrongly decided and, at the very least, they are an insufficient predicate for a finding of willfulness.

Even with their recent changes to their proposed Second Amended Complaints, the fact remains that Plaintiffs cannot sustain a willful violation claim based upon the facts of this case and this Court's prior rulings.  Willfulness under Section 198 requires the intentional doing of an act and knowing that the act is being done.  See Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998) (An employer acts "willfully" if it "knowingly, deliberately, or voluntarily disregards its obligation to pay wages.") (internal quote omitted).  Here, Plaintiffs' willfulness claims rest on what this Court has described as "ambiguous" contracts.  This Court's determination that the agreements between Plaintiffs and New York Life are ambiguous precludes a finding that New York Life willfully violated Section 193.  See Cohen v. Fox–Knapp, Inc., 226 A.D.2d 207, 207 (1st Dep't 1996) (relevant to the willfulness inquiry is whether the terms of the employment agreement drafted by the employer are "clear, unequivocal and complete"); Daley v. Related Cos., 179 A.D.2d 55 (1st Dep't 1992) (dissent argued against finding willfulness where an ambiguous agreement "cried out for interpretation"); Cf. Berardi v. Fundamental Brokers, Inc., Nos. 89-5143, 90-0646, 1990 WL 129174 (S.D.N.Y. Aug. 30, 1990) (existence of a bona fide dispute precludes finding of willfulness).  In light of this Court's prior determination that the parties' written agreements are ambiguous and the Court of Appeals acknowledgement that the relevant law was unsettled prior to 2008, Plaintiffs' proposed willfulness violation claims cannot survive a motion to dismiss.

It is significant that Plaintiffs' inability to plead facts supporting a finding of willfulness persists after the extensive discovery that pre-dated their proposed amendments.  Even having already engaged in discovery concerning the compensation policies and practices that applied to them, Plaintiffs can only muster vague statements regarding things that allegedly happened after they left New York Life and a feeble public policy argument.  Those sparse, conclusory

allegations do not state a plausible claim for a willful violation of the New York Labor Law.

Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1949.  Consequently, Plaintiffs' requests to add

liquidated damages claims should be denied.

      **B.**    **The Court Should Not Permit Chenensky's Commission Chargeback Claim Amendment Because It is Futile And Because Of Chenensky's Undue Delay And Resulting Undue Prejudice.**

          **1.**    **Chenensky's Proposed Commission Chargeback Claim Is Purely Hypothetical And Cannot Withstand A Motion To Dismiss.**

Gold's original commission reversal claim was two-fold.  First, he alleged that all

commission reversals appearing on his ledger were unlawful, regardless of whether the

commissions were advanced or annualized.  After conceding at summary judgment that the

advanced and annualized commissions posted to his ledger were unearned, Gold withdrew his

claim that New York Life could not reverse advanced commissions posted to his ledger up until

such time as the Company received the underlying first year policy premium.  See Stipulation

and Proposed Order, submitted August 22, 2011, Exh. G to Lynch Decl.  Gold's only remaining

commission reversal claim is that New York Life violated Section 193 because it reserved the

right to "chargeback" commissions for certain short-lived products even after certain premiums

for those products were paid by the customer.

As explained in New York Life's reply brief on summary judgment, Gold never

experienced any commission chargebacks associated with any such products.  See Def. Reply

Br., p. 15 (Docket No. 35); Declaration of Carol Poole, ¶ 8.  His claim is purely hypothetical

(i.e., Gold never sold a product with a commission chargeback schedule).  See Declaration of

Carol Poole, ¶ 8.  So, too, is Chenensky's proposed "chargeback" claim.[7]  Chenensky has not

---

[7]  Chenensky's commission reversal allegations are modeled after Gold's original allegations and do not appear to take into account the withdrawn claims regarding advanced and

alleged that he actually ever experienced any commission chargeback relating the sale of any

New York Life products with a commission chargeback schedule.  Nor can he do so.  <u>See</u>

Declaration of Carol Poole, ¶ 8.  Accordingly, there is no factual basis to suggest that Chenensky

ever suffered any damage as a result of New York Life's reservation of the right to chargeback

commission credits for those products.  His proposed chargeback claim, therefore, cannot

withstand a motion to dismiss.  <u>See</u> <u>Morris v. Fordham Univ.</u>, No. 03-0556, 2004 WL 906248, at

*2 (S.D.N.Y. Apr. 28, 2004) (noting that a prerequisite for standing is that the alleged injury

"must affect the plaintiff in a personal and individual way.") <u>citing</u> <u>Lujan v. Defenders of</u>

<u>Wildlife</u>, 504 U.S. 555, 561 (1992); <u>see also</u> <u>Thompson v. County of Franklin</u>, 15 F.3d 245, 249

(2d Cir. 1994) (standing cannot be inferred argumentatively from averments in the pleadings, but

rather must affirmatively appear in the record, so that, on a motion to dismiss, it is the burden of

the party who seeks standing to sue clearly to allege facts demonstrating that he is a proper party

to invoke judicial resolution of the dispute); <u>see also</u> <u>Goldberger v. Bear, Stearns & Co.</u>, No. 98-

8677, 2000 WL 1886605, at *1 (S.D.N.Y. Dec. 28, 2000)  (to maintain a class action, the named

plaintiffs must first establish that they have a valid claim with respect to the conduct alleged;

otherwise, their complaint must be dismissed even if allegations show that others may might

have a valid claim).  For this reason alone, Plaintiff Chenensky's proposed chargeback

amendment is futile and this Court should deny it with prejudice.

### 2.     Chenensky Unduly Delayed For Over Four Years In Seeking to Add His Proposed Chargeback Claim.

Even if Chenensky's reversal claim were viable, it is grossly belated.  Chenensky does

---

annualized commissions.  That said, his motion suggests that he is seeking only to add a
commission chargeback claim.  To the extent that Chenensky seeks to revive that Gold's
withdrawn commission reversal claim, his proposed claim fails on the merits just as Gold's
did.

not even bother to offer an explanation for his delay – legitimate or otherwise.  Neither the facts nor the law concerning any claim Chenensky may have against New York Life have changed since he left the Company in November 2006.  Chenensky filed his original Complaint a year after leaving New York Life without asserting a commission reversal claim.  In September 2009, five months after learning that Gold filed a Complaint with allegations "parallel" to those that he now seeks to plead (See Plaintiffs' Brief, p. 5), Chenensky filed his First Amended Complaint, again choosing not to plead a commission reversal claim.

Chenensky then sat back for another twenty-one months while the parties briefed and the Court decided summary judgment in his case and in the Gold case.  In total, Chenensky slept on his commission reversal claim for over four-and-half years from the time it accrued, three-and-a-half years from the date he filed his lawsuit, twenty-eight months after he deposed New York Life's head of agency compensation for multiple days and eighteen months from the date the Court decided summary judgment on his individual claims.  His extreme and unjustified delay should preclude his late amendment.  See e.g. Priestley v. Am. Airlines, Inc., 1991 WL 64459, at *2 (S.D.N.Y. Apr. 12, 1991) ("Insofar as the proposed claim is not predicated on facts learned after the pleading stage of the litigation, the resulting delay is not excusable.").

> ### 3.   Chenensky's Proposed Chargeback Amendment Would Be Unduly Prejudicial Because He Is Proposing, Post-Summary Judgment, To Add A Hypothetical Claim On Behalf Of Thousands Of Agents.

Chenensky's inexplicable delay in seeking leave to add a commission reversal claim is unduly prejudicial to New York Life.  The obvious reason that Plaintiffs seek to add a chargeback claim to Chenensky's case is that they wish to significantly increase New York Life's potential exposure by extending the class period for such a claim by an additional fourteen months and expand the potential class for the chargeback claim to include thousands of Established Agents.  As it stands now, Gold's putative class includes only New York State TAS

Agents (because Gold was never an Established Agent) and the class period for his chargeback claim extends only to April 2003.  If Chenensky were permitted to add a chargeback claim, the putative class for his chargeback claim would extend far beyond the limited scope of the chargeback claim in Gold, which is limited solely to TAS agents.  A chargeback claim in Chenensky would extend to a putative class including Established Agents and the class period would extend back to December 2001.  Also, adding a chargeback claim to Chenensky would vastly expand the recovery period for many of the TAS Agents in Gold's putative class.  By joining Chenensky's proposed chargeback class, their claim would encompass not just the time of their TAS affiliation, but also the time during the class period when they were Established Agents.  For example, the chargeback claim period for a current Established Agent whose TAS Agreement expired in October 2003 would increase from six months (April 2003 to October 2003) to nearly ten years (December 2001 to the present).  New York Life will be severely prejudiced by the late addition of such a claim, the significant expansion of the class period for such a claim and the addition of thousands of potential class members on such a claim.

Moreover, New York Life would be prejudiced because of the additional discovery and motion practice the proposed late amendment would require.  The parties completed discovery on Chenensky's individual claims back in March 2009 (after approximately eleven months of discovery) and fully briefed summary judgment as to those claims in the summer of 2009 – more than two years ago.  The parties did not conduct discovery on Chenensky's newly proposed chargeback claim and New York Life did not have an opportunity to address that claim in its summary judgment motion.  If this Court were to ignore Chenensky's inordinate delay in seeking leave to amend and permit Chenensky to add a commission chargeback claim at this stage, the parties would have to engage in discovery on the merits of Chenensky's chargeback claim

concerning his understanding of the chargeback process, whether he experienced any chargebacks as alleged, and if so, whether he challenged the chargeback process.  Without question, there will be significant cost associated with that discovery and motion practice – cost which could have been avoided if Chenensky timely sought leave to amend years ago.

Perhaps even more importantly, defense of this new claim is complicated immeasurably by the passage of time since Chenensky's departure from New York Life – placing New York Life at a disadvantage that it would not have faced had Chenensky not slept on his rights.  In the intervening four-and-a-half years, products have changed (with some having not been sold by New York Life in several years) and memories have undoubtedly faded.  For those reasons, Chenensky's proposed chargeback claim amendment should be denied.

## IV.   CONCLUSION

For all of the above reasons, New York Life respectfully requests that the Court deny Plaintiffs' Joint Motion to Amend in its entirety.

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP

By:    s/ Sean P. Lynch
  Richard G. Rosenblatt (pro hac vice)   Michael L. Banks (pro hac vice)
  Sean P. Lynch          MORGAN LEWIS & BOCKIUS LLP
  502 Carnegie Center       1701 Market Street
  Princeton, New Jersey 08540    Philadelphia, Pennsylvania 19103
  Phone: (609) 919-6600      Phone (215) 963-5387
  Fax: (609) 919-6701       Fax (215) 963-5001
  rrosenblatt@morganlewis.com    mbanks@morganlewis.com
  slynch@morganlewis.com     *Counsel for Defendants*